UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SEA CARRIERS LP I and<br>SEA CARRIERS CORPORATION<br>(individually and on behalf of those<br>similarly situated),<br><br>         v.<br><br>NYSE EURONEXT, INC., et als. | : <br>:  Case No. 07-civ-4658 (LAP)<br>:<br>:<br>:<br>:  **Document Electronically Filed**<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
APPOINT SEA CARRIERS LP I AND SEA CARRIERS CORPORATION
AS LEAD PLAINTIFFS AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL**

**BECKER MEISEL LLC**
Eisenhower Plaza II
354 Eisenhower Parkway
Suite 2800
Livingston, New Jersey 07039
(973) 422-1100

On the Brief:
Martin L. Borosko
James M. McCarrick
John J. O'Connell
Michael E. Holzapfel

**SCHATZ NOBEL IZARD P.C.**
20 Church Street
Suite 1700
Hartford, CT 06103
(860) 493-6292

On the Brief:
Seth R. Klein

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ........................................................................................... ii

**I** ................................................................................................................................... 1
   **PRELIMINARY STATEMENT** ............................................................................ 1

**II** ................................................................................................................................. 4
   **BACKGROUND** ..................................................................................................... 4

**III** ................................................................................................................................ 5
**LEGAL ARGUMENT** ................................................................................................... 5
    **SEA CARRIERS SATISFIES THE PSLRA CRITERIA FOR
      APPOINTMENT AS LEAD PLAINTIFF** ............................................................... 5

     A. The Sea Carriers Group Has Satisfied the PSLRA's Notice and Filing
        Requirements ................................................................................................. 5
     B. Sea Carriers Group Possesses the Largest Financial Interest in the Relief
        Sought by the Class ....................................................................................... 6
     C. Sea Carriers Group Satisfies the Criteria of Rule 23 of the Federal Rules of
        Civil Procedure ............................................................................................... 8
        (i) Typicality .................................................................................................. 10
        (ii) Adequacy ................................................................................................. 11
     D. The Court Should Approve Sea Carriers' Choice of Co-Lead Counsel .. 12

**IV** ............................................................................................................................... 13
**CONCLUSION** ............................................................................................................ 13

**TABLE OF AUTHORITIES**

**Cases**

*Aronson v. McKesion*, 79 F.Supp. 2d 1146, 1157 n. 11 (N.D. Cal. 1999) ......................... 8
*Barnett v. Elan Corp*, 236 F.R.D. 158, 159 (S.D.N.Y. 2005) ........................................... 6
*Clair v. DeLuca*, 232 F.R.D. 219, 222 (W.D.Pa. 2005) .................................................... 6
*Geoffrey Glauser v. ECVI Career Colleges Holding Corp.,* 236 F.R.D. 184, 188-189
   (S.D.N.Y. 2006) .............................................................................................................. 9
*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) .............. 10
*In re NYSE Specialists Securities Litigation,* No. 03-Civ-8264 (RWS)(S.D.N.Y. 2003) . 12
*In re Olsten Corp. Sec. Litig.*, 2 F. Supp.2d 286, 296 (E.D.N.Y. 1998) ............................ 9
*In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998) .......... 9
*In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) ..... 10
*In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 823 (N.D. Ohio 1999) ......................... 8
*In re XM Satellite Radio Holdings Securities Litigation*,
   237 F.R.D. 13, 16 (D.D.C. 2006) ................................................................................... 6
*In re. Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ....................................................... 9
*Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, at *5
   (N.D.Ill. Aug. 11, 1997) ................................................................................................. 7
*Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. LaBranche & Co.,
   Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) ..................................................... 5, 9, 10, 11
*Sea Carriers Corporation v. Empire Programs, Inc. and Robert A. Martin.*, Case No. 04-
   cv-7395 (RWS) .............................................................................................................. 8
*Sea Carriers LP I and Sea Carriers Corporation v. NYSE Euronext, et als.*, 07-CIV-4658
   ....................................................................................................................................... 1
*The Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y. 2004) .... 7, 9

**Statutes**

15 U.S.C. § 78u-4(a)(1) ...................................................................................................... 5
15 U.S.C. § 78u-4(a)(2)(A)(i)-(vi) .................................................................................... 11
15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................................... 4, 5
15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................. 6
Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)
   ........................................................................................................................... 1, 6, 8, 12

**Other Authorities**

Securities and Exchange Act of 1934 ................................................................................. 1
Statement of Managers – "The Private Securities Litigation Reform Act of 1995,"
   141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995) ....................... 12

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................................................... 9
Rule 23 of the Federal Rules of Civil Procedure .......................................................... 6, 8

# I

## PRELIMINARY STATEMENT[1]

Named plaintiffs Sea Carriers LP I and Sea Carriers Corporation (collectively the "Sea Carriers Group") respectfully submit this memorandum of law in support of their motion for an order: (i) appointing them as Lead Plaintiffs in this putative class action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (ii) approving their choice of Becker Meisel LLC ("Becker Meisel") and Schatz Nobel Izard, P.C., ("Schatz Nobel") as Co-Lead Counsel.

Sea Carriers brings this lawsuit against NYSE Euronext, Inc., which operates the New York Stock Exchange ("NYSE"), together with the NYSE's Specialist Firms, Floor Brokers and various Routing Brokers. *See Complaint* ¶ 59-70. The putative class consists of all investors who placed market orders to purchase or sell securities listed on the NYSE through the NYSE's Super Designated Order Turnaround System ("SuperDOT") between October 17, 1998 and June 20, 2007 (the "Class Period").[2]

As explained more fully in the Complaint, SuperDOT is an electronic trading system designed to facilitate the transmission of "smaller" orders (i.e., order of less than 10,000 shares) directly to the exchange's trading post (and Specialist Firm) where a particular security is traded, as opposed to routing the orders to a floor broker for manual execution. *See Complaint* ¶ 2. The goal of SuperDOT, at least ostensibly, is to provide these smaller orders with execution quality consistent with other orders executed within the NYSE, in accordance with the principles set

---

[1] The facts are drawn from the allegations in the complaint entitled, *Sea Carriers LP I and Sea Carriers Corporation v. NYSE Euronext, et als.*, 07-CIV-4658 (the "Complaint").

[2] Limit orders are also routed through SuperDOT. By their very nature, however, limit orders are executed differently than market orders, and are therefore beyond the scope of the Complaint.

forth in Section 11A of the Securities and Exchange Act of 1934 ("Exchange Act"). Section 11A requires all market centers within the National Market System ("NMS"), which includes the NYSE, to maintain "fair and orderly" markets. *Complaint* ¶¶ 41-45. Empirical evidence, however, demonstrates that SuperDOT order execution is anything but fair and orderly, and confirms a vast conspiracy to subordinate the execution of these trades for the benefit of a privileged subset of investors. *Id*. at ¶¶ 76-102.

The Complaint alleges that during the Class Period, the defendants violated federal antitrust laws and Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Specifically, the Complaint alleges that the defendants created, fixed and maintained two secret and distinct submarkets on the NYSE: a dominant "insider" submarket comprised of trades executed on the exchange floor; and an inferior "outsider" submarket comprised of SuperDOT trades. *See Complaint* ¶¶ 4-10. In order to accomplish this intentional, systematic subordination of SuperDOT trades, the defendants employed various contrivances, including: (1) routinely filling floor orders ahead of simultaneously or previously placed SuperDOT orders; (2) allowing floor brokers to view incoming SuperDOT orders; (3) routinely slowing the execution of SuperDOT orders under advantageous market conditions, while accelerating their execution under disadvantageous market conditions; and (4) publishing illusory, deceptive and misleading statistics regarding execution quality within the NYSE. *Id.* at ¶ 7. As a result of this illegal activity, SuperDOT traders suffered approximately $1 billon in damages per year throughout the Class Period. *Id.* at ¶ 9; ¶¶ 101-102.

This class action seeks redress for SuperDOT investors for the economic harm inflicted by the defendants. As set forth below, the Sea Carriers Group is capable of most adequately representing the interests of the Class Members, as it holds the largest financial interest in the

relief sought, having traded approximately 6.6 billion shares of NYSE-listed securities during the Class Period. *See generally, Declaration of Per G. Barre Dated August 20, 2007* ("Barre Dec.") (submitted in support of the instant motion). Furthermore, the Sea Carriers Group's claims are typical of those of the Class because they arise from the same course of illegal conduct perpetrated by the defendants and invoke similar legal arguments to establish liability. Finally, the Sea Carriers Group's interests in this action in no way conflict with interests of the Class Members, and Sea Carriers is represented by qualified, experienced and able counsel.

## II

## **BACKGROUND**

The Sea Carriers Group filed this action on June 1, 2007. On June 20, 2007, it published notice of the action in the *Prime Newswire*, a national, business-oriented wire service as required by 15 U.S.C. § 78u-4(a)(3)(A)(i). *See Declaration of Joseph G. Harraka, Jr.*, *Exhibit A*. Within sixty days after publication, the Sea Carriers Group timely filed the within motion for appointment as lead plaintiff and for approval of its selection of lead counsel.

### III

### LEGAL ARGUMENT

**SEA CARRIERS SATISFIES THE PSLRA CRITERIA FOR APPOINTMENT AS LEAD PLAINTIFF**

Congress enacted the PSLRA in 1995 to address perceived abuses in securities fraud class actions. *See Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004). The PSLRA amends the Exchange Act by, *inter alia*, establishing a procedure governing the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). [3]

As set forth below, the Sea Carriers Group satisfies each and every element this procedure prescribes, and is precisely the sort of investor Congress envisioned to control this lawsuit.

**A. The Sea Carriers Group Has Satisfied the PSLRA's Notice and Filing Requirements**

As a preliminary matter, the PSLRA requires the plaintiff in the initial action to publish notice in a national, business-oriented publication within twenty days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must inform members of the purported class of (1) the details and pendency of the action; and (2) their right to seek appointment as lead plaintiff within sixty days from the date on which notice is published. *Id.* Within ninety days after the publication of such notice, the court shall consider any motion made by any class member,

---

[3]   In addition to causes of action arising under the Exchange Act, the Complaint also pleads claims under the federal antitrust laws, as well as claims for breach of fiduciary duty. These claims are beyond the scope of the PSLRA and as such the Sea Carriers Group does not address them herein.

5

regardless of whether they are individually named as plaintiffs in any one action, and shall appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i).

As previously indicated, the Sea Carriers Group filed the first complaint on June 1, 2007, and on June 20, 2007 published notice in *Prime Newswire* (formerly PrimeZone), a multinational business-oriented newswire with an extensive distribution network. *See, e.g., In re XM Satellite Radio Holdings Securities Litigation*, 237 F.R.D. 13, 16 (D.D.C. 2006) (endorsing PrimeZone as an acceptable business newswire service for purposes of PSLRA's notice and publication requirements); *Barnett v. Elan Corp*, 236 F.R.D. 158, 159 (S.D.N.Y. 2005) (same); *Clair v. DeLuca*, 232 F.R.D. 219, 222 (W.D.Pa. 2005) (same).  That notice (attached to the accompanying *Declaration of Joseph G. Harraka, Jr.* as Exhibit A) set forth the pendency of the action, the claims asserted therein, the class period and the right of any class member to seek appointment as lead plaintiff.  The Sea Carriers Group thereafter timely filed this motion on August 20, 2007.

The Sea Carriers Group having satisfied the notice and filing requirements of the PSLRA, the next step in the inquiry requires the Court to determine whether the Sea Carriers Group is the "most adequate plaintiff" to represent the class.  The statute provides that the most adequate plaintiff is the plaintiff who (1) holds "the largest financial interest" in the relief sought by the class; and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Sea Carriers Group Possesses the Largest Financial Interest in the Relief Sought by the Class

Identification of the most adequate plaintiff begins with the identification of the movant with the largest financial interest in the relief sought by the class. 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I)(bb).  In light of the PSLRA's silence as to the appropriate method for assessing

a movant's financial interest, courts examine several factors, such as: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Pirelli*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (quoting *Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997)). *See also The Constance Sczesny Trust v. KPMG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y. 2004).

Unlike the majority of class action lawsuits brought under the Exchange Act, however, this lawsuit does not allege wrongdoing with respect to a single security or a particular set of securities. Rather, the systemic discrimination against SuperDOT investors alleged in the Complaint spanned across what is believed to be all NYSE-listed securities, and at least encompassed the fifty-one S&P 500 securities enumerated in the Complaint. Furthermore, this lawsuit does not seek relief as the result of a series of purchases or sales *per se* at artificially inflated/deflated prices. Rather, it seeks relief for fraud alleged to have affected both purchases and sales, resulting in SuperDOT investors paying artificially inflated costs.[4]  In such cases – i.e., cases in which the alleged wrongdoing is not security-specific or transaction-specific – this jurisdiction has adopted the "aggregate trades theory" to determine a movant's financial interest, which simply looks to the total number of shares purchased and sold during the class period. *See Pirelli*, 229 F.R.D. at 406-408.

On an aggregate trades basis, the Sea Carriers Group holds the largest financial interest in the relief sought by the class. During the Class Period, the Sea Carriers LP I and Sea Carriers

---

[4]  The cost of purchasing and selling securities through SuperDOT during the Class Period was disparate compared to market insider orders executed within the NYSE, and inflated when compared to orders directed to competing market centers.

7

Corporation collectively traded 6.6 billion shares of NYSE-listed securities via SuperDOT.[5] Specifically, from October 1998 through December 2002, Sea Carriers Corporation traded 4.5 billion shares through a joint venture or other contractual relationship it carried on with an individual named as Robert Alan Martin, who traded as "Empire Programs, Inc."[6] From January 2003 through October 2003, Sea Carriers LP I traded 1.3 billion shares through a limited partnership with Sea Carriers Management LLC, an affiliated entity. Finally, from October 2003 through October 2005, Sea Carriers LP I traded approximately 800 million shares through the same structure. *See Barre Declaration* ¶ 12-18.

Sea Carriers knows of no other class member who possesses a larger financial interest. Indeed, it is highly doubtful that any other lead plaintiff applicant can document such a massive stake in this litigation on an aggregate trade or other basis. Accordingly, Sea Carriers satisfies the "largest financial interest" requirement.

### C. Sea Carriers Group Satisfies the Criteria of Rule 23 of the Federal Rules of Civil Procedure

Once the Court identifies the movant with the largest financial stake in the litigation, the inquiry turns to whether the movant satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *See also In re Cendant Corp. Litigation*, 264 F.3d 201, 262 (3d Cir. 2001)

---

[5] The PSLRA expressly provides that the lead plaintiff may be either a "person" or "group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In that regard, it is well established that it is appropriate to combine the aggregate trades of related entities to determine their collective financial interest. *See Aronson v. McKesion*, 79 F.Supp. 2d 1146, 1157 n. 11 (N.D. Cal. 1999) (allowing separate funds to be aggregated for lead plaintiff purposes because they were under the control of a single person). *See also In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 823 (N.D. Ohio 1999) (requiring that a lead plaintiff group have a pre-existing relationship).

[6] The issue of whether a joint venture relationship existed between these parties is presently in litigation before the Honorable Robert W. Sweet in a proceeding captioned *Sea Carriers Corporation v. Empire Programs, Inc. and Robert A. Martin.*, Case No. 04-cv-7395 (RWS).

8

("Once the court has identified the movant with the largest financial interest in the relief sought by the class, it should then turn to the question whether that movant otherwise satisfies the requirements of [Rule 23]."). A movant's ability to satisfy Rule 23, however, is secondary to whether he holds the largest financial interest. As interpreted by the courts, that provision of the PSLRA requires the proposed Lead Plaintiff to demonstrate that (i) the claims of the proposed lead plaintiff are typical of the claims of the class and (ii) the proposed lead plaintiff will fairly and adequately protect the interests of the class. *See, e.g., Geoffrey Glauser v. ECVI Career Colleges Holding Corp.,* 236 F.R.D. 184, 188-189 (S.D.N.Y. 2006); *Pirelli,* 229 F.R.D. at 419-20; *Constance Sczesny Trust,* 223 F.R.D. at 324; *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45-46 (S.D.N.Y. 1998); *In re Olsten Corp. Sec. Litig.,* 2 F. Supp.2d 286, 296 (E.D.N.Y. 1998).

Although there are two other requirements under Fed. R. Civ. P. 23(a) (numerosity and commonality), only the typicality and adequacy criteria are relevant to the selection of Lead Plaintiff. *See Constance Sczesny Trust*, 223 F.R.D. at 323-24 (S.D.N.Y. 2004). *See also Pirelli*, 229 F.R.D. at 412 ("Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements…have been met."). That is, once a movant demonstrates that he holds the largest financial interest, he need only show that his claims are typical of those of the class and that he will adequately represent the class members – the fact that another class member with a lesser financial may be *more* typical or *more* adequate is of no moment. *See In re. Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of

9

no consequence. So long as the plaintiff with the largest [financial interest] satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."). *Accord Pirelli*, 229 F.R.D. at 411.

### (i) Typicality

Typicality exists if claims arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). The claims of the movant and the putative class need not, however, be identical, and the "possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact." *In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995).

The Sea Carriers Group easily satisfies the typicality requirement, as its claims arise from the same combination and conspiracy perpetrated by the defendants as those of the putative class members. The Sea Carriers Group, like the other purported class members in this action, purchased and sold NYSE-listed securities via SuperDOT, the execution quality of which were intentionally subordinated for the benefit of trades executed through the floor of the exchange. Also like other class members, the Sea Carriers Group elected to trade via SuperDOT in the first instance based on representations by the NYSE and its member firms that the exchange maintained a fair and orderly market, and that all trades received similar execution quality.[7] Moreover, each class member must advance similar legal arguments to prove the defendants' liability under this scheme, even if there are minor variations in their factual allegations.

---

[7] These representations include mandatory public disclosures in the form of statistical, aggregated trade data.

Based on the foregoing, Sea Carriers submits that its claims are typical of those of the Class Members.

### (ii) Adequacy

Sea Carriers will "fairly and adequately protect the interests of the class" in accordance with Rule 23(a)(4). In order to satisfy the adequacy requirement, (1) there should be no conflict between the interests of the class and the lead plaintiff, and (2) the movant's attorneys must be qualified, experienced, and generally able to conduct the proposed litigation. *Pirelli*, 229 F.R.D. at 413. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy. *Id*.

Having traded 6.6 billion shares during the Class Period, the Sea Carriers Group certainly has a substantial interest in this litigation. Moreover, the Sea Carriers Group possesses unparalleled experience and knowledge concerning the allegations in the Complaint. *See Barre Declaration* ¶ 19-29. It amassed essential resources that will be beneficial to the Class. *Id.* These resources include transaction data relating to its billions of trades. *Id.* These resources also include an exhaustive and costly statistical analysis undertaken by the Sea Carriers Group's counsel, which uncovered the empirical evidence supporting the allegations in the Complaint. *Id.* Plainly stated, it is doubtful that the action can be prosecuted as pleaded without the benefit of that confidential and privileged analysis. *Id.* These facts clearly indicate that the Sea Carriers Group has a significantly substantial interest in this lawsuit so as to ensure its vigorous prosecution, and that its interests are not at all antagonistic to those of the class members, all of whom have an interest in ensuring that SuperDOT trades receive fair and orderly execution.[8]

---

[8] The Sea Carriers Group notes that it has also satisfied all other procedural elements of the PSLRA, as mandated by 15 U.S.C. § 78u-4(a)(2)(A)(i)-(vi). Specifically, Sea Carriers has certified: (i) that it has reviewed the Complaint and authorized its filing; (ii) that it did not

### D. The Court Should Approve Sea Carriers' Choice of Co-Lead Counsel

The PSLRA expressly provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class." See Statement of Managers – "The Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995).

In this case, the Sea Carriers Group is represented by qualified and experienced co-counsel capable of prosecuting this class action through to its conclusion. *See Barre Declaration* ¶ 30-32. Becker Meisel is a prominent business law firm with extensive experience in financial market investigations and litigation. *See generally Declaration of Martin L. Borosko*. Schatz Nobel has significant experience representing investors in securities fraud class actions, which includes serving as lead counsel in numerous PSLRA class actions. *Id.* Both firms enjoy AV ratings from Martindale Hubble and are well-qualified to represent the proposed class. *Id.* Accordingly, the Court may confidently conclude that Sea Carriers satisfies the adequacy requirement and appoint Becker Meisel and Schatz Nobel as co-lead counsel in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(v)

---

purchase subject securities shares at the direction of its counsel or in order to participate in any private action arising under the federal securities laws; (iii) that it is willing to serve as representative party on behalf of a class, which includes providing testimony at deposition and trial; (iv) that it has set forth all of its transactions during the Class Period; (v) that it has neither served nor sought to serve as a representative party on behalf of a class in any private federal securities action, save *In re NYSE Specialists Securities Litigation,* No. 03-Civ-8264 (RWS)(S.D.N.Y. 2003) (in which it sought, but did not obtain, appointment as lead plaintiff); and (vi) that it will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery.

## IV

## CONCLUSION

Based on the foregoing, the Sea Carriers Group respectfully requests that the Court enter the accompanying order appointing Sea Carriers LP I and Sea Carriers Corporation as Co-Lead Plaintiffs in this class action, and approving their selection of Becker Meisel and Schatz Nobel as co-lead counsel.

                                        Respectfully submitted,
                                        BECKER MEISEL LLC


                                        /s/     Joseph G. Harraka, Jr.
                                               JOSEPH G. HARRAKA, JR. (JH-9474)


Dated: August 20, 2007
       Livingston, New Jersey